# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY MOSBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:14-cv-00472-RAW |
| | ) |
| THE KANSAS CITY SOUTHERN | ) |
| RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT THE KANSAS CITY SOUTHERN RAILWAY COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant, The Kansas City Southern Railway Company (hereinafter "KCSR" or "Defendant"), by and through its undersigned counsel, presents the following Answer and Affirmative Defenses to the Complaint filed by Plaintiff, Gregory Mosby (hereinafter "Mosby" or "Plaintiff").

### Nature of Action

1. KCSR admits that Mosby purports to bring claims alleging violations of the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA").

### Jurisdiction

2. The jurisdictional allegations set forth in paragraph 2 state conclusions of law to which no response is required; to the extent that any response is deemed to be required, they are denied.

### Venue

3. KCSR admits that it conducts business within the territory of the United States District Court for the Eastern District of Oklahoma. The allegation that "adverse actions occurred" within the Eastern District of Oklahoma states conclusions of law to which no

response is required; to the extent that any response is deemed to be required, those allegations are denied.

**Parties**

4.     KCSR admits that its records reflect that it employed Mosby from February 23, 1998 to May 9, 2010, during which Mosby was an Oklahoma resident.  KCSR further admits that Mosby stated at his deposition during related proceedings before the Department of Labor, Office of Administrative Law Judges, that he is currently an Alabama resident.  The remaining allegations state conclusions of law to which no response is required; to the extent that any response is deemed to be required, the remaining allegations are denied.

5.     KCSR admits that it is a railroad carrier based in Missouri that conducts business in several states, including Oklahoma, and that its records reflect that it employed Mosby from February 23, 1998 to May 9, 2010.  The remaining allegations state conclusions of law to which no response is required; to the extent that any response is deemed to be required, the remaining allegations are denied.

**Statement of Operative Facts**

6.     KCSR admits that it brought two disciplinary charges against Mosby and removed him from service following an incident that occurred on April 16, 2010, and that it conducted an investigation of the April 16, 2010 incident, after which it ultimately terminated his employment on May 9, 2010.  KCSR denies that it "issued him harsher discipline than other employees."  The remaining allegations state conclusions of law to which no response is required; to the extent that any response is deemed to be required, the remaining allegations are denied.

7.     KCSR admits the allegations in paragraph 7.

8. KCSR admits the allegations in paragraph 8.

9. KCSR admits the allegations in paragraph 9.

10. KCSR admits that, during his shift on April 16, 2010, Mosby was responsible for, among other duties, "identify[ing] the cars that needed to be picked up," and that Engineer Roy McGee operated the locomotive, pulling and pushing cars as necessary to assemble the train. KCSR denies that Brakeman Lyndal Stewart "performed the couplings," as Mosby testified at his investigatory hearing held on May 4, 2010 that he and Stewart had taken turns that evening coupling the cars. KCSR admits that, typically, the brakeman or conductor responsible for the couple watches the stationary car, providing radio or hand-signal instruction to the engineer to slow and to ultimately stop when the couplers of each car are properly lined and ultimately joined.

11. KCSR admits that a shove is a move in which the engineer pushes or moves train cars. KCSR further admits that the point of the shove is the end of the car farthest from the engine, and that it would be the first part of the car to strike something that might be in the way of the shove. The remaining allegations in paragraph 11 purport to characterize and/or paraphrase, in whole or part, KCSR's General Code of Operating Rules ("GCOR"), a document that speaks for itself; to the extent that a response is deemed to be required, it denies those allegations.

12. The allegations in paragraph 12 purport to characterize and/or paraphrase, in whole or part, KCSR's General Code of Operating Rules ("GCOR"), a document that speaks for itself; to the extent that a response is deemed to be required, it denies those allegations.

13.     The allegations in paragraph 13 purport to characterize and/or paraphrase, in whole or part, KCSR's General Code of Operating Rules ("GCOR"), a document that speaks for itself; to the extent that a response is deemed to be required, it denies those allegations.

14.     KCSR admits that Mosby's crew performed a number of switching operations on April 16, 2010, including shoving train cars southward in order to couple the cars. KCSR denies that Brakeman Stewart "had to make . . . the coupling," as Mosby later admitted that, due to poor communication between Mosby and Stewart, there was some confusion as to who was responsible for coupling and uncoupling the cars.

15.     KCSR admits that, during one coupling, Mosby stood with his back facing the railcar movements. KCSR denies that Mosby stood "a few feet south" of the track, as Mosby later admitted, including at his deposition during related proceedings before the Department of Labor, Office of Administrative Law Judges, that he had positioned himself in the "foul of the track" (*i.e.*, within inches of the track, in violation of KCSR's Safety Through Awareness and Responsibility (STAR) Core Safety Rule T-6(c)), and that he was struck by a grab iron that protruded only six inches from the railcar.

16.     KCSR admits that, at approximately 6:30 p.m. on April 16, 2010, Brakeman Stewart directed Engineer McGee to begin pushing one car into another car for purposes of coupling them. KCSR admits that Brakeman Stewart did not watch the point of shove to ensure that the area was clear. KCSR further admits that, at the time of the coupling, Mosby had turned his back to the railcar movements and was standing within inches of the track, in violation of KCSR's STAR Core Safety Rule T-6(c).

17.     KCSR admits that, due to poor communication between Mosby and Stewart, Mosby assumed that the brakeman, Stewart, was going to couple the cars but Stewart assumed

that Mosby was going to couple the cars. This led to a rough coupling of the cars, causing the cars to collide and roll. KCSR further admits that, at the time of the coupling, Mosby had turned his back to the railcar movements and was standing within inches of the track, in violation of KCSR's STAR Core Safety T-6(c). KCSR admits that after initially attempting to conceal his injuries, Mosby eventually disclosed that, when the cars collided, he was struck in the back by the grab iron of the passing car, which hit him in the rib area, knocking him to the ground, where he remained in a fetal position for five minutes.

18. KCSR admits that, after Mosby was hit by the grab iron of the car, he did not notify his managers of the injury but rather continued to work the rest of his shift. KCSR is without sufficient information to admit or deny the allegations regarding what Mosby "was accustomed to," what he "felt," or what he "thought"; to the extent that a response is deemed to be required, it denies those allegations. KCSR denies the remaining allegations, including that Mosby "thought he was alright."

19. To the extent that Mosby refers to the April 16, 2010 incident in which he was injured, KCSR admits the allegations in paragraph 19.

20. KCSR admits that Mosby eventually disclosed that he felt "worse" on Saturday, and that "his condition did not improve on Sunday."

21. KCSR admits that, before disclosing the injury to KCSR, Mosby sought medical treatment from his chiropractor, Dr. Guy Tucker, on April 19, 2010 for the injury he suffered while on duty on April 16, 2010. KCSR further admits that, after his chiropractor refused to treat him for his work-related injury, Mosby contacted KCSR Assistant Trainmaster ("ATM") Kerry Douglas to report the injury at approximately 11:45 a.m. on April 19, 2010. This was KCSR's first knowledge of Mosby's injury, despite, as he admits, experiencing pain, seeing blood in his

urine, feeling his ribs move, and seeking medical treatment from his chiropractor in the interim. KCSR is without sufficient information to admit or deny the allegations regarding what Mosby "decided" or any allegations that characterize interactions between Mosby and his chiropractor; to the extent that a response is deemed to be required, it denies those allegations.

22. KCSR admits the allegations in paragraph 22.

23. KCSR admits that, after receiving a telephone call from Mosby on April 19, 2010 reporting an injury that he incurred three days earlier, ATM Douglas contacted Senior Trainmaster ("STM") Antonio McKinney to discuss Mosby's circumstances. KCSR admits that STM McKinney instructed ATM Douglas to meet Mosby at his chiropractor's office to obtain further information about his injury and to ensure that he received immediate medical treatment. KCSR denies the remaining allegation in paragraph 23.

24. KCSR admits that ATM Douglas met Mosby at the chiropractor's office on April 19, 2010 and, at that time, Mosby spoke over the telephone to STM McKinney. KCSR admits that Mosby and STM McKinney discussed, among other things, the fact that Mosby suffered the injury three days prior and that he was seeking medical treatment.

25. KCSR admits that ATM Douglas had Mosby fill out a personal injury report. KCSR denies that Douglas and McKinney "did not allow [Mosby] the medical care he requested," or that the Company in any way "denied Mr. Mosby the medical treatment he requested."

26. KCSR admits that Douglas and McKinney arranged for Mosby to receive treatment from a physician at the closest appropriate facility—in this case, Sparks Occupational Medical Clinic in Fort Smith, Arkansas. KCSR denies that it did not "allow[] [Mosby] the medical care he requested."

27. KCSR admits that, shortly after notifying KCSR of his injury, Mosby was transported to the Sparks Occupational Medical Clinic in Fort Smith, Arkansas for medical treatment. KCSR denies the remaining allegations set forth in Paragraph 27.

28. KCSR admits that, after notifying KCSR of his injury, Mosby immediately was transported to the Sparks Occupational Medical Clinic in Fort Smith, Arkansas so that he could be evaluated by a physician. KCSR does not know what Mosby means by the term "considerable" and, thus, is without sufficient information to admit or deny Mosby's allegation that he had to wait a "considerable amount of time"; to the extent that any response is deemed to be required, the allegations are denied. To the extent that Mosby contends his treatment was substantively interfered with or delayed, KCSR specifically denies that allegation.

29. KCSR admits that its records reflect that the physicians at Sparks Occupational Medical Clinic diagnosed Mosby with, among other things, a broken rib and a bruised kidney.

30. KCSR denies that it "denied Mosby the medical treatment he requested" or in any way "interfered with and delayed his medical treatment." The allegation that KCSR "violated the prohibition of 49 U.S.C. 20109(c)(1)" states a conclusion of law to which no response is required; to the extent that any response is deemed to be required, that allegation is denied.

31. KCSR admits that its records reflect that, on May 4, 2010, it held two separate formal investigations regarding the incident that occurred on April 16, 2010. The first investigation was to determine whether the crew (Mosby, Stewart and McGee) failed to properly perform their duties in a safe and proper manner. The second formal investigation was to determine whether Mr. Mosby complied with the Company's reporting rules regarding his on-duty injury.

32. KCSR admits that, after a review of the documentary evidence and testimony received during the first formal investigation (regarding the crew), General Manager Chad Devenney determined that Mosby, Stewart and McGee failed to properly perform their duties in a safe and proper manner. Specifically, Devenney determined that Mosby violated KCSR's STAR Core Safety Rule T-6(c) when he turned his back to the railcar movements and stood within inches of the track. Devenney also determined that Mosby and Stewart violated STAR Core Safety Rule 1(c) by failing to communicate effectively prior to their shift regarding who would be in charge of coupling the cars, and that McGee violated General Code of Operating Rule 5.3.7 by failing to use radio communication during the shoving movement to avoid miscommunication and injury. KCSR admits that Mosby, Stewart and McGee each received a 30-day suspension following this investigation for their unsafe work practices that violated KCSR's rules.

33. KCSR admits that it held a second formal investigation on May 4, 2010 to determine whether Mosby complied with the Company's reporting rules regarding his on-duty injury. KCSR denies the remaining allegations of Paragraph 33.

34. With respect to the second investigation, KCSR admits that it charged Mosby with violating provisions of the GCOR regarding late reporting of an injury, specifically GCOR Rule 1.1.3 and GCOR Rule 1.2.5.

35. The allegations in paragraph 35 purport to characterize and/or paraphrase, in whole or part, the GCOR, a document that speaks for itself; to the extent that a response is deemed to be required, it denies those allegations.

36. The allegations in paragraph 36 purport to characterize and/or paraphrase, in whole or part, the GCOR, a document that speaks for itself; to the extent that a response is deemed to be required, it denies those allegations.

37. The allegations in paragraph 37 purport to characterize and/or paraphrase, in whole or part, the GCOR, a document that speaks for itself; to the extent that a response is deemed to be required, it denies those allegations.

38. KCSR admits that, during the investigatory hearing on May 4, 2010, Mosby testified that he was hit by a grab iron of a rolling car during his shift on April 16, 2010, and that it "knocked the wind out of [him]." KCSR further admits that Mosby testified at the investigatory hearing that he purposely did not report his injury to KCSR because he "do[es]n't like to be a candy-butt about them kind of things." KCSR admits that STM McKinney testified that Mosby told STM McKinney that he did not notify KCSR of his injury because he "thought he was going to be okay," but that Mosby also admitted that he "woke up in pain" and sought medical treatment from his chiropractor before notifying KCSR of his injury. KCSR also admits that ATM Douglas testified that Mosby told him that he did not report his injury because "he thought he would be okay," but that he admitted that "the wind was knocked out of him," that "he had been feeling pretty bad due to the incident" and that he sought medical treatment from his chiropractor before reporting the injury to KCSR. KCSR denies the remaining allegations in Paragraph 38.

39. KCSR denies that "no evidence was presented" to contradict testimony that Mosby did not report his injury because he thought he was "okay." In fact, Mosby testified that he did not report his injury because he did not want to be a "candy-butt," and not because Mosby thought he was okay. In addition, evidence presented at the first May 4, 2010 investigation

(involving the entire team) indicated that Mosby did not report his injury because he knew that he had violated KCSR's safety rules by standing on the foul of the track with his back turned to a movement and did not want to face disciplinary consequences.  Furthermore, Mosby did not deny that he failed to report his injury to KCSR for three whole days following the accident, despite testifying that he "felt pain" when he woke up on Saturday morning, April 17th, that he continued to feel pain throughout the weekend, and that, when he woke up on Monday morning, he "could feel the rib moving … when [he] woke up" and he "knew it was . . . a fracture back there."  Instead, Mosby testified that he traveled to a previously scheduled appointment with a chiropractor, where he sought medical treatment for his injury.  Only after his chiropractor refused to treat Mosby for his work-related injury without KCSR's authorization did Mosby notify KCSR of his condition.

40. KCSR denies the allegations that Mosby acted in "good faith" and that KCSR "had no valid reason to terminate him."  KCSR disciplined Mosby because he failed to timely report his injury in compliance with KCSR's rules and deliberately concealed his injury from KCSR for three days, despite, as he admits, experiencing a lot of pain, seeing blood in his urine, feeling his ribs move, and seeking medical treatment from his chiropractor in the interim.

## Cause of Action Under 49 U.S.C. § 20109

41. KCSR denies the allegations set forth in the unnumbered paragraph that follows the heading "CAUSE OF ACTION UNDER 49 U.S.C. § 20109."

42. The allegations set forth in paragraph 42, incorrectly numbered by Plaintiff as paragraph 38, state conclusions of law to which no response is required; to the extent that any response is deemed to be required, KCSR denies the allegations.

43. KCSR is without sufficient information to admit or deny the allegations in paragraph 43, incorrectly numbered by Plaintiff as paragraph 39, that he "struggled to find employment within the railroad community" following his termination from KCSR, that he "was able to find a position with a non-union short-line railroad" after two years, or that he "incur[ed] the expenses of having to sell his house and many possessions in order to move from Oklahoma to Alabama"; to the extent that any response is deemed to be required, those allegations are denied. KCSR denies the remaining allegations.

**Exhaustion of Administrative Remedies**

44. KCSR admits that its records reflect that Mosby filed a complaint with the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA") dated November 22, 2013, alleging a violation of the FRSA. With respect to Mosby's contention that it was filed within 180 days of KCSR allegedly delaying and/or interfering with his medical treatment (which KCSR denies), KCSR denies that Mosby's OSHA Complaint was filed within 180 days and, therefore, it was not timely.

45. With respect to paragraph 45, incorrectly numbered by Plaintiff as paragraph 40, KCSR admits that OSHA investigated Mosby's complaint. KCSR is without sufficient information to admit or deny the remaining allegation; to the extent that any response is deemed to be required, that allegation is denied.

46. KCSR admits the allegations in paragraph 46, incorrectly numbered by Plaintiff as paragraph 41.

47. KCSR admits the allegation in paragraph 47, incorrectly numbered by Plaintiff as paragraph 42.

48. KCSR admits the allegations in paragraph 48, incorrectly numbered by Plaintiff as paragraph 43, that the Department of Labor's Office of Administrative Law Judges docketed Mosby's complaint on January 23, 2014, and set a hearing date of October 7, 2014. KCSR further admits that, on September 4, 2014, KCSR filed a Motion for Summary Decision, and that Mosby failed to respond to KCSR's Motion for Summary Decision by the deadline on September 19, 2014. Instead, on September 17, 2014, Mosby requested an extension to file his opposition to October 1, 2014. KCSR further admits that, on September 23, 2014, the Administrative Law Judge ("ALJ") granted Mosby's request for an extension and cancelled the hearing scheduled for October 7, 2014, pending the resolution of KCSR's Motion for Summary Decision.

49. KCSR admits the allegation in paragraph 48, incorrectly numbered by Plaintiff as paragraph 44, that, on September 24, 2014, the day after the ALJ entered an order cancelling the hearing pending resolution of KCSR's Motion for Summary Decision (and 1,215 days after filing his OSHA complaint), Mosby filed a Notice of Intention to File Original Action in United States District Court.

50. The allegations set forth in paragraph 50, incorrectly numbered by Plaintiff as paragraph 45, state conclusions of law to which no response is required; to the extent that any response is deemed to be required, the allegations are denied.

51. KCSR admits that Mosby purports to bring this action pursuant to 49 U.S.C. § 20109. The remaining allegations in paragraph 51, incorrectly numbered by Plaintiff as paragraph 46, state conclusions of law to which no response is required; to the extent that any response is deemed to be required, those allegations are denied.

52. KCSR admits that Mosby purports to seek relief pursuant to 49 U.S.C. § 20109, but denies that the relevant facts entitle him to any relief whatsoever.

* * *

To the extent that any of Mosby's allegations in his Complaint have not been heretofore admitted or denied by KCSR, they are hereby denied. Accordingly, KCSR requests that the Court enter judgment in its favor and award it costs, attorneys' fees, and any other appropriate relief.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Mosby fails, in whole or in part, to state claims upon which relief can be granted.

### Second Affirmative Defense

Mosby's claims are barred, in whole or in part, by the applicable statutes of limitations. Specifically, Mosby's claim that KCSR interfered with and/or delayed his medical treatment on April 19, 2010 is untimely, in violation of 49 U.S.C. § 20109(c)(1). Specifically, 49 U.S.C. § 20109(d) requires that actions brought by an employee who alleges discharge, discipline, or other discrimination in violation of subsection (a), (b), or (c) of 49 U.S.C. § 20109 must be brought within 180 days of the alleged violation (in this case, on or before October 16, 2010); however, Mosby filed his administrative complaint on November 5, 2010.

### Third Affirmative Defense

Mosby's claims are barred, in whole or in part, to the extent that his requested relief is not available under the statutes pursuant to which he seeks relief.

### Fourth Affirmative Defense

Mosby's claims are pre-empted in whole or part by the Railway Labor Act.

**Fifth Affirmative Defense**

Mosby's claims are barred, in whole or in part, to the extent that he waived and/or released the claims.

**Sixth Affirmative Defense**

Mosby's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

**Seventh Affirmative Defense**

Mosby's claims are barred, in whole or in part, by the doctrine of laches.

**Eighth Affirmative Defense**

Mosby's claims are barred, in whole or in part, by the doctrine of express or implied waiver.

**Ninth Affirmative Defense**

Mosby's claims are barred, in whole or in part, to the extent that he failed to satisfy any administrative prerequisites or exhaust available administrative remedies.

**Tenth Affirmative Defense**

The Court has no jurisdiction over Plaintiff's claim that KCSR violated 49 U.S.C. 20109(c) by denying, delaying, or interfering with his medical treatment, as Plaintiff failed to object to the Department of Labor ("DOL")'s November 22, 2013 Preliminary Findings, which found that Plaintiff's claim of medical interference has no merit. Accordingly, this finding is a final order of the DOL and not subject to judicial review pursuant to Section 20109(d)(3).

**Eleventh Affirmative Defense**

KCSR had legitimate, non-retaliatory business reasons for any actions taken with respect to Mosby's employment, and these reasons were not pretextual. Further, all employment

decisions regarding Mosby were made in good faith and would have been made regardless of any protected activity under the FRSA.

## Twelfth Affirmative Defense

KCSR cannot be held liable for punitive damages stemming from the alleged violations of its employees or managers to the extent those employees or managers acted contrary to its policies and procedures established to ensure anti-retaliation.

## Thirteenth Affirmative Defense

Mosby's claims for monetary damages are barred, in whole or in part, to the extent that he failed to mitigate or minimize his alleged damages, the entitlement to which KCSR expressly denies.

## Fourteenth Affirmative Defense

Mosby's alleged damages are speculative, inappropriate under the facts of this action, and/or unavailable as a matter of law.

## Fifteenth Affirmative Defense

Mosby's claims for punitive damages are barred by the Constitutions of the United States and the State of Oklahoma.

## Sixteenth Affirmative Defense

KCSR is entitled to a set-off credit against Mosby's damages, if any, for any such amounts he received from any source whatsoever with respect to the issues covered by this suit.

## Seventeenth Affirmative Defense

Mosby's claims are barred in whole or part by his prior election to pursue remedies under the Railway Labor Act and/or his labor agreement.

**Eighteenth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, because KCSR can show by clear and convincing evidence that it would have dismissed Mosby absent his purported protected activity.

\* \* \*

**KCSR reserves the right to seek leave of Court to assert additional defenses as they may come to light during the course of the investigation, discovery, or otherwise.**

Dated: December 19, 2014

Respectfully submitted,

s/James S. Urban
James S. Urban
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Telephone: (412) 391-3939
Facsimile: (412) 394-7959

C. Ryan Norton
Hardin, Jesson & Terry, PLC
P.O. Box 10127
Fort Smith, AR 72917-0127
Telephone: (479) 452-2200
Facsimile: (479) 452-9097

**ATTORNEYS FOR RESPONDENT THE KANSAS CITY SOUTHERN RAILWAY COMPANY**

# CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December 2014, a copy of the foregoing Defendant The Kansas City Southern Railway Company's Answer and Affirmative Defenses was served via the Court's Case Management/Electronic Case Files (CM/ECF) System on the following:

Bart Fite
Fite Law Firm
P.O. Box 1411
Muskogee, OK 74402


Christopher H. Leach, Esq.
Hubbell Law Firm, LLC
1100 Main Street, Suite 2930
Kansas City, MO 64105

_____
James S. Urban