# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

GREGORY MOSBY,

    Plaintiff,

v.

THE KANSAS CITY SOUTHERN
RAILWAY COMPANY,

    Defendant.

Case No. CIV-14-472-RAW

## ORDER & OPINION[1]

Plaintiff Gregory Mosby (hereinafter "Mosby") filed his Complaint on October 29, 2014, claiming damages for retaliation in violation of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109 (a)(4).[2] Specifically, Mosby claims that after he reported an injury, Defendant The Kansas City Southern Railway Company (hereinafter "KCSR") suspended and then terminated him. KCSR argues that it did not suspend or terminate him for reporting an injury, but for violating its safety rules and timely reporting rules.

Now before the court are cross motions for summary judgment. KCSR seeks summary judgment in full [Docket No. 41]. Mosby seeks partial summary judgment, arguing that the court should find that KCSR violated the FRSA and hold a damages-only trial [Docket No. 43].

Also before the court is KCSR's motion to strike Mosby's affidavit [Docket No. 75]. KCSR argues that Mosby's affidavit is contradictory to his deposition and creates a sham fact

---

[1]For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

[2]On January 14, 2015, by agreement of the parties, any claim based on section (c)(1) was dismissed.

issue. The court does not agree that it is contradictory. Rather, the affidavit provides additional information. The court also does not agree that the issue raised in Mosby's affidavit has a significant effect on the outcome of the summary judgment motions. The motion to strike is denied.

**UNDISPUTED MATERIAL FACTS[3]**

Mosby is forty-nine years old and started work for KCSR on February 23, 1998. Mosby Dep., Docket No. 42, Exh. 9, pp. 3 and 5. At the time of Mosby's termination, he was a conductor for KCSR and a member of the United Transportation Union. Id. at 5 and 17. KCSR employs more than 3,000 employees, of whom about eighty percent are members of one of several labor unions. Devenney Decl., Docket No. 42, Exh. 1, p. 1.

On Friday, April 16, 2010, Mosby was the conductor for a workgroup that was building a train. Mosby Dep., Docket No. 42, Exh. 9, p. 10. Building a train involves using an engine to push and pull railcars from one track to another until the cars are in the desired order and then coupling them together. The conductor is responsible for directing the order of the railcar movements. Douglas Dep., Docket No. 44, Exh. 3, p. 27. The engineer pushes and pulls the cars, and the brakeman joins the cars to the train. Id. Before he orders the engineer to push or

---

[3]"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1136 (10th Cir. 2003)(citation omitted).
    Additionally, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

pull the train, the brakeman is to ensure that nothing is in front of the train or the cars to be joined. The brakeman is then to give the engineer the information necessary for the engineer to couple at a safe speed. The conductor is ultimately responsible for controlling each and every train movement via radio transmission and for ensuring the safety and efficiency of each and every train movement. Id. at 28; Devenney Dep., Docket No. 44, Exh. 4, p. 15.

To make the coupling that resulted in Mosby's injury, the brakeman told the engineer to push the train south. Mosby Dep., Docket No. 42, Exh. 9, pp. 10-11. Mosby was standing south of the cars to be joined in the foul of the train[4] and facing away from the train. Id. at 11, 12 and 17; Mosby Statement to KCSR Agent, Docket No. 42, Exh. 10, p. 34-35. Mosby was knocked to the ground by a grab iron that protruded from the railcar about six inches. Mosby Dep., Docket No. 42, Exh. 9, p. 11. Mosby felt the "wind knocked out" of him and stayed on the ground on his hands and knees for at least a couple of minutes catching his breath before walking around stretching for about five minutes. Id. at 11-12. Mosby asked the brakeman what went wrong that caused him to be hit. Id. at 11. Then he finished his shift. Id. The lack of communication between Mosby, the brakeman and the engineer resulted in a "rough coupling" causing the cars to lurch forward. Id. at 10-11; Mosby Statement to KCSR Agent, Docket No. 42, Exh. 10, p. 32.

Mosby felt "sore" at the end of his shift. Id. at 15 and 18. Mosby had blood in his urine starting the day of the accident and frequently for the next two weeks. Id. at 42. Due to an enlarged prostrate, Mosby had blood in his urine sporadically for years before the accident at issue in this case. Mosby Aff., Docket No. 62, Exh. 4, p. 2. According to his medical report on June 8, 2010, Mosby stated that the blood in his urine was "years ago." Med. Rec., Docket No.

---

[4]In "the foul of the train" means standing too close or close enough to be hit. Id. at 17.

75, Exh. 1, p. 2.

Mosby did not report his injury on April 16, 2010. Mosby was not scheduled to work the next two days. Mosby awoke on Saturday, April 17, 2010 feeling terrible with pain all over, but mainly in his right arm and back. Mosby Statement to KCSR Agent, Docket No. 42, Exh. 10, p. 55-56. Mosby called his chiropractor on April 17, 2010 and told him what happened. Id. at 57. Mosby was sore in his right mid-abdominal area on Saturday and Sunday, April 17 and 18, 2010. Mosby Dep., Docket No. 42, Exh. 9, p. 19. On Sunday evening, Mosby called in sick for the next day. Mosby Statement to KCSR Agent, Docket No. 42, Exh. 10, p. 62.

Mosby had a previously scheduled chiropractor's appointment for carpal tunnel on Monday, April 19, 2010. The chiropractor worked on his hands and x-rayed his back. Id. at 58. Because the injury to his ribs was job-related, his chiropractor said Mosby would have to report it to his company before he could be treated. Mosby Dep., Docket No. 42, Exh. 9, p. 20. Mosby then contacted his supervisor and reported the injury. Mosby Statement to KCSR Agent, Docket No. 42, Exh. 10, p. 59. When asked by the KCSR agent why he did not report his injury on Friday, April 17, 2010, Mosby stated that he "didn't think it was that big of deal . . . ." Id.

KCSR employees must comply with KCSR's General Code of Operating Rules (hereinafter "GCOR"). GCOR 1.2.5 states in pertinent part: "All cases of personal injury, while on duty or on company property, must be immediately reported to the proper manager and the prescribed form completed." Docket No. 42, Exh. 2, p. 3. GCOR 1.1.3 states in pertinent part: "Report by the first means of communication any accidents; personal injuries . . . . Where required, furnish a written report promptly after reporting the accident." Id. at 2. A grossly negligent, willful or flagrant violation of GCOR 1.2.5 is a dismissal infraction. Discipline

Policy, Docket No. 42, Exh. 3, p. 6.

Mosby was trained on the GCOR rules during his new-hire orientation and thereafter on an annual basis. Mosby Dep., Docket No. 42, Exh. 9, pp. 5-6. Mosby understood that he was required to adhere to the rules. Id. at 6. Mosby was aware that he was required to report a work injury immediately. Id. at 8; Mosby Statement to KCSR Agent, Docket No. 42, Exh. 10, p. 60.

On April 22, 2010, three days after Mosby reported his injury, KCSR issued a notice of investigation. Investigation Notes, Docket No. 42, Exh. 12, p. 4. After two investigatory hearings[5], KCSR charged Mosby with several rule violations. On May 14, 2010, KCSR suspended Mosby for sixty days for violation of safety rules, including failing to hold a job briefing and fouling the track. Letter, Docket No. 42, Exh. 17, p. 1. On May 9, 2010[6], KCSR terminated Mosby for violating GCOR 1.2.5 and 1.1.3. Letter, Docket No. 42, Exh. 18, p. 1. Both the engineer and the brakeman were suspended for thirty days for one safety violation[7], but were not disciplined for failing to report Mosby's injury. The engineer may have seen Mosby's accident, but the brakeman did not. Mosby Dep., Docket No. 42, Exh. 10, p. 14.

KCSR's Vice President declares that it consistently discharges employees who violate GCOR 1.2.5 and 1.1.3 by willfully failing to report work-related injuries in a timely manner. Devenney Dec., Docket No. 42, Exh. 1, p. 2. Between 2009 and 2011, KCSR dismissed six employees other than Mosby for reporting injuries late, including two who reported their injuries

---

[5]The first hearing concerned Mosby's alleged failure to timely report his injury. The second concerned his alleged failure to work safely.

[6]Oddly, Mosby was terminated on the 9th, and suspended on the 14th.

[7]KCSR found that the engineer violated the job briefing rule and that the brakeman violated the radio response rule.

the day after they were injured.  Id.  KCSR's Vice President also declares that KCSR does not discipline employees whose failure to timely report an injury is not willful.  Id. at 3.  In August, 2009, KCSR did not discipline a yardmaster who reported an injury the day after it occurred when he credibly stated that he felt no symptoms the day he was injured and immediately reported the injury when he did have symptoms.  Id.

KCSR's Vice President further declares that KCSR consistently discharges employees who fail to timely report non-injury-related safety hazards.  Id.  In April 2010, it terminated a conductor and engineer who withheld information regarding a train separation.  Id.  In October 2010, it terminated a foreman for leaving the scene of an accident and failing to report it.  Id.

KCSR has a policy that prohibits retaliation and/or discrimination against employees who report workplace injuries and/or safety concerns.[8]  KCSR Internal Control Plan, Docket No. 42, Exh. 4.  KCSR has a handout informing its employees to "speak up" if they are subjected to retaliation for reporting a work injury.  KCSR "Speak Up!" Pamphlet, Docket No. 42, Exh. 6. KCSR employees regularly report on-duty injuries, including 93 employees reporting injuries in 2009 and 98 employees reporting injuries in 2010.[9]  Devenney Dec., Docket No. 42, Exh. 1, p. 3.

After an investigation into Mosby's claims, the Secretary of the Occupational Safety and Health Administration (hereinafter "OSHA") issued Findings.[10]  Docket No. 62, Exh. 2.  The

---

[8] Mosby disputes that KCSR enforces this policy.  Mosby relies on the fact that other similar lawsuits have been filed against KCSR.  Howard Dep., Docket No. 62, Exh. 3, p. 3-4.

[9] Mosby argues that employees are still afraid to report injuries.  Mosby again relies on the fact that other similar lawsuits have been filed against KCSR.  Howard Dep., Docket No. 62, Exh. 3, p. 3-4.  He also relies on the evidence included in the Findings of the Occupational Safety and Health Administration, which are included below.

[10] KCSR has filed a motion in limine regarding materials from the investigation into Mosby's claims by the OSHA.  KCSR argues that the materials are irrelevant, constitute

Secretary's list of examples from the data provided by KCSR shows inconsistencies in KCSR's disciplinary practices when its employees reported injuries late. Id. at 6. The Secretary included several witness statements regarding KCSR's practices toward employees who report injuries, including, *inter alia*, the following: "I am leery of reporting an injury, because I believe Kansas City Southern would find a way to discipline me," and "I would find it difficult to report an on duty injury to KCS and not be afraid for my continued employment without fear of discipline or retribution for getting hurt." Id. at 8-10.

**SUMMARY JUDGMENT MOTIONS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." Kimzey v. Flamingo Seismic Solutions, Inc., 696 F.3d 1045, 1048 (10th Cir. 2012). Of course, the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a

---

unreliable inadmissible hearsay, would confuse the jury and be unduly prejudicial to KCSR. While the court may grant the motion in limine as to the Secretary's Findings for purposes of trial, the court acknowledges the Findings for purposes of the summary judgment motions. Of course, the court gives no deference to the Secretary's decision, but acknowledges the evidence upon which the Secretary relied. Factual findings from a legally authorized investigation are admissible in a civil trial. Federal Rule of Evidence, 803(a)(A)(iii). See also Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 518 (1st Cir. 2005) (noting that *de novo* review "generally consists of the court's independent weighing of the facts and opinions in that record," and that "the court grants no deference to administrators' opinions or conclusions based on these facts."); Sundance Energy Okla., LLC v. Dan D. Drilling Corp., No. CIV-13-991-R, 2015 WL 1957090 at *3-4 (W.D. Okla. April 29, 2015) (finding OSHA narratives admissible under public records exception despite lack of hearing and cross-examination and no first-hand knowledge on the part of the investigator)). The court further notes that at the summary judgment stage, it is not to weigh the evidence, but to determine whether a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

*Federal Rail Safety Act*

The FRSA serves "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. It was enacted, "in significant part, to counter a history of retaliation against injured railway employees and the under-reporting of injuries by the nation's railroad companies." Cash v. Norfolk Southern Ry. Co., No. 6:13-CV-00056, 2015 WL 178065, at 9 (W.D. Va. January 14, 2015) (citing Araujo v. New Jersey Transit Rail Operations, Inc., 708 F.3d 152, 159 (3rd Cir. 2013). The FRSA provides in pertinent part:

> A railroad carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done . . . to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee.

49 U.S.C. § 20109 (a)(4). The FRSA incorporates the rules, procedures and burdens of proof set forth in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21") whistle blower cases. 49 U.S.C. § 20109(d)(2)(A)(i) and (ii); Araujo, 708 F.3d. 152, 157. The "FRSA burden-shifting is much more protective of plaintiff-employees than the McDonnell Douglas[11] framework." Araujo, 708 F.3d at 158.

To establish a *prima facie* case, Mosby must establish by a preponderance of the evidence that: (1) he engaged in protected activity; (2) KCSR knew that he engaged in the protected activity; (3) he suffered an adverse action; and (4) the protected activity was a contributory factor

---

[11]411 U.S. 792 (1973).

8

to the adverse employment action.  Araujo, 708 F.3d at 157.  If Mosby establishes a *prima facie* case, the burden shifts to KCSR to show by clear and convincing evidence that it would have taken the same adverse action in the absence of the protected activity.  Id.  "For employers, this is a tough standard, and not by accident."  Id. at 159. (citation and brackets omitted).

The second and third elements are not disputed.  KCSR knew Mosby reported an injury.  Mosby suffered an adverse employment action when he was suspended and then terminated.  KCSR argues that Mosby attempted to hide his injury before finally reporting it and that therefore the report was made in bad faith and not a protected activity under the FRSA.  KCSR also argues that Mosby's injury report was not a contributory factor in its decision to suspend and terminate Mosby.  The court, therefore, looks to the first and fourth elements to determine if Mosby has established a *prima facie* case.  If he has, the court must determine whether KCSR has shown by clear and convincing evidence that it would have suspended and terminated him even if he had not reported his injury.

### *Protected Activity – Good Faith*

KCSR argues that Mosby's FRSA claim fails because he cannot show he acted in "good faith" when he reported his injury three days late.  KCSR maintains that Mosby actively concealed his injury from KCSR for those three days and only reported it when he had to in order to get treatment.  Mosby counters that on April 16, 2010, he thought that he just had the wind knocked out of him and that he was okay.  While he was sore over the weekend, Mosby contends that he did not know he was seriously injured until he saw his chiropractor on April 19, 2010 and that he reported his injury immediately upon that discovery.  Additionally, Mosby argues that while there was blood in his urine, he had experienced this previously due to an unrelated

9

condition and so did not immediately realize it was due to being hit and knocked to the ground by the grab iron.

Citing Ray v. Union Pac. R.R. Co., 971 F.Supp.2d 869, 883-84 (S.D. Iowa 2013), Plaintiff further argues that whether or not he withheld the fact of his injury from KCSR previously is irrelevant and that for his injury report to have been in good faith under the FRSA, the only question is whether at the time of his injury report he believed his injury was work-related. In that case, the plaintiff complained to his doctor in April of 2008 of pain in his knees. Id. at 872. In October of 2009, he informed his supervisor that he needed time off work for knee surgery and when asked, he stated that the surgery was not related to his work at the railroad. Id. A month later, an attorney contacted the defendant railroad and informed it that the plaintiff's knee injuries were caused by his work at the railroad. Id.

The plaintiff argued that he did not realize until after his surgery that his work may have contributed to his knee injuries. Id. at 873. Plaintiff later testified, however, that he knew as early as 2008 that his work was causing his knee injuries. Id. at 874. The defendant railroad argued it was entitled to summary judgment because the plaintiff, having changed his story at least four times in two years, had not made his injury report in good faith as required by the FRSA. Id. at 882. That court ruled the phrase "good faith" in the FRSA "applies directly to a singular 'act done . . . to notify . . . the railroad carrier . . . of a work-related personal injury.'" Id. at 883-84 (citing 49 U.S.C. § 20109(a)(4)). "Thus, even assuming that Plaintiff was dishonest with Defendant on one occasion or another, the relevant inquiry remains whether, at the time he reported his injury to Defendant, Plaintiff genuinely believed the injury he was reporting was work-related." Id. at 884. Under this theory, Mosby reported his injury in good faith. At the

time of his report, Mosby believed in good faith that his injury was work-related.

Citing Murphy v. Norfolk S. Ry. Co., No. 1:13-CV-863, 2015 WL 914922 (S.D. Ohio March 3, 2015), Defendant argues that an employee who reports an on-duty injury after actively attempting to conceal his injury from his employer has not made a "good faith" injury report under the FRSA. In that case, the plaintiff was injured on the job by a chainsaw that kicked back and cut his leg when he was not wearing protective chaps. Id. at *1. His co-worker took him to the hospital and reported the injury to their supervisor. Id. at *1-2. The plaintiff then contacted his supervisor and asked that he not report the injury further so that he would not be ridiculed, disciplined for a safety violation or retaliated against for an injury report. Id. at *2.

Nine months later, the defendant railway company discovered the injury from another source and forced him to report it. Id. The plaintiff argued that he had reported the injury to his supervisor on the day of the accident and that even though he asked his supervisor not to report it further, he had complied in good faith with his reporting requirements. Id. at *5. The court ruled that the evidence supporting the plaintiff's good faith was not overwhelming, but was substantial enough to withstand summary judgment. Id. at *5-6.

Mosby's evidence of good faith is more substantial than the plaintiff's in Murphy. He did not hide his injury for nine months. If he hid it, it was for three days. Whether he hid it is a question for the jury. Whether he knew he was injured because of the pain he suffered or the blood in his urine is a question for the jury. A reasonable jury could find that Mosby acted in good faith or did not act in good faith. Thus, neither motion may be granted as to this element and the court moves onto the next.

*Contributing Factor*

KCSR argues that Mosby's injury report was not a contributing factor in its decision to discipline him. He was disciplined for his violations of KCSR's safety and timely reporting rules. KCSR has provided evidence that it consistently disciplines its employees for willfully failing to report work injuries in a timely manner. Mosby argues that because KCSR would never have discovered any rule violations absent his injury report, his injury report is inextricably intertwined with his discipline, and thus the contributory factor is met.

A contributing factor "is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." Araujo, 708 F.3d at 158 (citations omitted). An employee "*need not* demonstrate the existence of a retaliatory motive on the part of the employee taking the alleged prohibited personnel action in order to establish that his disclosure was a contributing factor to the personnel action." Id. at 158-59 (emphasis in original) (citations omitted).

The Ray court, relying on Araujo, found that there was a genuine issue of material fact as to whether the plaintiff's protected activity was a contributing factor in his termination, both because of the temporal proximity between the report and subsequent investigation and because the plaintiff's report was "inextricably intertwined" with his termination. Ray, 971 F.Supp.2d at 888. Citing Kuduk v. BNSF Ry., Co., 768 F.3d 786, 792 (8th Cir. 2014), KCSR argues that "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Id., at 792. Kuduk, however, is not analogous. In that case, the plaintiff's protected activity, while close in time, "was completely unrelated to the fouling-the-tracks incident that led to his discharge." Id. Mosby's

injury report was both close in time to his discipline and inextricably intertwined therewith.

Under the AIR-21 burden-shifting framework, Mosby's evidence of his injury report being a contributing factor in his discipline is substantial enough to withstand KCSR's summary judgment motion. It is not substantial enough to justify granting Mosby's summary judgment motion. The question of whether Mosby's injury report was a contributing factor in his discipline is one for the jury, not the court.

### *KCSR's Burden*

As noted above, if Mosby establishes a *prima facie* case, the burden shifts to KCSR to show by <u>clear and convincing evidence</u> that it would have taken the same adverse action in the absence of the protected activity. <u>Id.</u> This is a tough standard. Under <u>McDonnell Douglas</u>, an employer "need only articulate a legitimate, non-discriminatory reason for the action." <u>Araujo</u>, 708 F.3d at 162. KCSR has done that. KCSR disciplined Mosby for safety violations and for willfully failing to timely report his injury. Under the AIR-21 burden shifting framework, however, KCSR must show that "the truth of its factual contentions are highly probable." Id. at 159.

In <u>Araujo</u>, the plaintiff, a conductor-flagman, was disciplined for causing the injury that he reported by violating a safety rule. In the five years preceding his discipline, no other conductor-flagmen were disciplined for violating the same rule. The court found that the defendant had not met its steep burden. <u>Id.</u> at 163.

In an attempt to sustain its burden, KCSR argues that Mosby was in violation of its safety and timely injury reporting rules and that it consistently disciplines employees for such violations. Plaintiff, however, has introduced evidence that KCSR was not consistent in this

13

discipline and that its employees are apprehensive about reporting injuries for fear of losing their jobs.[12] Here, as in Araujo, the court finds that KCSR has met not its steep burden. KCSR has not shown by clear and convincing evidence that it would have disciplined Mosby if he had not reported his injury. Again, the court's function here is not to weigh the evidence, but to determine if there is a genuine issue for trial. As there are genuine issues of material fact, the court may not grant summary judgment to either party.

**CONCLUSION**

The cross motions for summary judgment [Docket No. 41 and 43] are hereby DENIED. KCSR's motion to strike Mosby's affidavit [Docket No. 75] is also DENIED.

IT IS SO ORDERED this 20th day of July, 2015.

_____
**HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**

---

[12] Mosby argues further that KCSR treated him differently than other employees in the same situation because it did not impose the same discipline on the engineer and brakeman. The court is not convinced by this argument, as it does not believe that the engineer and the brakeman were in the same situation as Mosby. The brakeman did not see the accident. The engineer may have seen it, but was not necessarily in the position to know if Mosby was injured. Mosby was in the best position to know if Mosby was injured, and Mosby still maintains that on April 16, 2010, he did not know he was injured. Nevertheless, at least as to the engineer, this is an issue of fact, not of law, and thus one for the jury.